WK:ELM
F. #2017R00321

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

EDWARD E. BOHM,
EDWARD J. SYPHER, JR., and
MATTHEW T. VOSS,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED
IN CLERK'S OFFICE
U.S. D?      ?   ?D.N.Y.

★   AUG 18 2017   ★

LONG ISLAND OF?? ?

**To Be Filed Under Seal**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANTS

(18 U.S.C. § 1349)

MJ 17- 742

EASTERN DISTRICT OF NEW YORK, SS:

JOHN G. KAROUNOS, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation (the "FBI"), duly appointed according to law and

acting as such.

Upon information and belief, in or about and between August 2015 and March

2017, both dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants EDWARD E. BOHM, EDWARD J. SYPHER, JR., and MATTHEW

T. VOSS (referred to hereinafter, collectively, as "the defendants"), together with others, did

knowingly and intentionally conspire:

(a)     to execute a scheme and artifice to defraud financial institutions, to wit:

Santander Bank ("Santander"), BankUnited and Northpointe Bank ("Northpointe") (collectively,

the "Banks"), and to obtain money and property from them by means of materially false and

fraudulent pretenses, representations and promises and, for the purpose of executing such scheme

and artifice, transmitted and caused to be transmitted by means of wire communication in

interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343; and

(b)      to devise a scheme and artifice to defraud the Banks and to obtain money and funds owned by and under the custody and control of the Banks, the deposits of which were insured by the Federal Deposit Insurance Corporation (the "FDIC"), by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

## INTRODUCTION

1.      I have been employed as a Special Agent with the FBI for approximately 15 years.  During my tenure with the FBI, I have participated in numerous financial fraud investigations and have participated in all aspects of investigations, including conducting surveillance, executing search warrants, debriefing defendants and informants, interviewing witnesses, reviewing and analyzing recorded conversations, and analyzing telephone toll information.  I have personally participated in the investigation of the fraudulent activity described below.   I am familiar with the facts and circumstances set forth below from: (a) my participation in the investigation; (b) my review of the case file and reports of other law enforcement officers involved in the investigation; and (c) bank records, email and telephone communications, and other sources of information.

2.      Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from

other law enforcement agents.   Because this affidavit is being submitted for the limited purpose

of establishing probable cause to arrest the defendants, I have not set forth each and every fact

learned in the course of this investigation.   Instead, I have set forth only those facts that I believe

are necessary to establish probable cause for the arrest warrants sought herein.   In addition,

where the contents of documents, or the actions, statements and conversations of others are

reported herein, they are reported in sum and substance and in part, except where otherwise

indicated.

### PROBABLE CAUSE

#### A.  The Defendants and Relevant Entities

3.     The defendant EDWARD E. BOHM, a resident of Suffolk County, New

York, was the President of Sales and, on or about and between August 2015 and April 2016, a

minority owner of Vanguard Funding, LLC.

4.     The defendant EDWARD J. SYPHER, JR., a resident of Westchester

County, New York, was the Chief Financial Officer of Vanguard Funding, LLC.

5.     The defendant MATTHEW T. VOSS, a resident of Suffolk County, New

York, was the Chief Operating Officer and, beginning on or about April 2016, a majority owner

of Vanguard Funding, LLC.

6.     Vanguard Funding, LLC ("Vanguard") was a New York State limited

liability company and a mortgage lender headquartered in Garden City, Nassau County, New

York.   Vanguard provided residential mortgage products to its clients.   Vanguard processed and

approved mortgage applications, but did not always pay for the mortgages it provided to its

clients with its own money.   In many cases, Vanguard paid for the mortgages it issued with

money it borrowed from "warehouse lenders," including Santander Bank, BankUnited and

Northpointe Bank.   Vanguard's mortgage banking license was suspended on July 12, 2017 by the New York State Department of Financial Services.

7.     Santander, BankUnited and Northpointe were "financial institutions" as defined in Title 18, United States Code, Section 20.   The deposits of the Banks were insured by the FDIC.   At all relevant times, the Banks provided "warehouse lines of credit" to Vanguard to pay for the mortgages Vanguard's clients used to purchase property.   Vanguard typically repaid the Banks after selling the mortgages it provided to clients to investors on the secondary market. Vanguard made a profit by earning origination points and fees in connection with the mortgages, and by selling the loans at a premium to investors on the secondary market.

### B. Definitions

8.     A "warehouse loan" was a short-term loan provided by a bank to Vanguard.   The warehouse loan was used to pay for a mortgage that Vanguard provided to its client in order to purchase or refinance property.   Typically, the life of a warehouse loan lasted from its origination until the mortgage it paid for was sold by Vanguard to an investor on the secondary market, which was generally only a matter of days.   The proceeds of the sale of the mortgage were then used to repay the bank's warehouse loan.

9.     A bank "curtailed" the outstanding balance of a warehouse loan it had provided to Vanguard when all or part of the loan went unrepaid for a certain period – at times 60 or 90 days – by making regular withdrawals from a Vanguard account held by the bank (a "Curtailment Account").[1]   A bank curtailed, or received payment for, the overdue warehouse

---

[1]     Vanguard's Curtailment Accounts contained a portion of Vanguard's profits, specifically those generated upon the sale of its clients' mortgages on the secondary market.

loans by applying the withdrawals from the Curtailment Account against the balance of the warehouse loan.

10.     A "refinancing" occurred when the payment terms and schedule of an existing mortgage were revised. The old mortgage was paid in full and replaced with a new mortgage, reflecting the new, agreed-upon payment terms.

11.     A "settlement agent" in a real estate transaction was a third party who was responsible for administering the transfer of money and property ownership. For example, the settlement agent: (a) processed the legal documents that transferred title to property, or the ownership interest in a mortgage loan, from seller to buyer, and (b) transferred the money provided by the buyer or a mortgage lender to the seller. A settlement agent is sometimes referred to as a "closing agent."

### C. The Fraudulent Scheme

12.     In or about and between August 2015 and March 2017, the defendants EDWARD E. BOHM, EDWARD J. SYPHER, JR., and MATTHEW T. VOSS, together with others, orchestrated a scheme to defraud the Banks by obtaining, and attempting to obtain, warehouse loans from the Banks by submitting material misrepresentations in Vanguard's warehouse loan submissions to the Banks. Specifically, the defendants falsely represented to the Banks that the warehouse loan moneys issued by the Banks would be used by Vanguard to pay for or refinance home mortgages provided by Vanguard to its clients.

13.     Based on these fraudulent loan submissions, and at the direction of the defendants, the Banks wired warehouse loan moneys to an attorney trust account (the "Attorney Trust Account") controlled by Co-Conspirator #1, a real estate attorney and settlement agent for Vanguard whose identity is known to your affiant. The Attorney Trust Account was located at

CapitalOne bank in New York State.   Co-Conspirator #1 then transferred the money from the Attorney Trust Account to a Vanguard account, controlled by the defendants, also at CapitalOne Bank.

14.      Although the Banks provided warehouse loan moneys to Vanguard for the purpose of paying for or refinancing home mortgages, the defendants, together with others, instead used these moneys, among other things: (a) to pay Vanguard executives' personal expenses and compensation, and (b) to pay off loans that the defendants had previously obtained with fraudulent loan submissions and used for improper purposes.[2]

15.      In paragraphs 17 through 34, below, I describe five examples of warehouse loans the defendants EDWARD E. BOHM, EDWARD J. SYPHER, JR., and MATTHEW T. VOSS, together with others, obtained from the Banks following the defendants' provision of fraudulent loan submissions to the Banks.   Evidence obtained in our investigation thus far suggests that the defendants fraudulently obtained at least fourteen warehouse loans, totaling approximately $8,958,669, which were used for illegitimate purposes.

**a.   Northfield Lane**

16.      By way of background, on approximately August 27, 2015, Santander provided Vanguard with a $984,221.62 warehouse loan which Vanguard used to pay for a mortgage for Client #1, an individual whose identity is known to the undersigned, to purchase a house on Northfield Lane in Nissequogue, New York (the "Northfield Lane Property").[3]

---

[2]      Evidence obtained in our investigation indicates that the majority of warehouse loans obtained by Vanguard were used to pay for or refinance home mortgages.

[3]      Upon information and belief, Client #1 is a close family member of the defendant EDWARD E. BOHM.

Following the purchase of the home, the defendant EDWARD E. BOHM and Client #1 moved into the house, in which BOHM and Client #1 currently reside.[4]

### Fraudulent Loan Submission #1

17.     Pursuant to a fraudulent loan submission provided to BankUnited by the defendants, on approximately August 12, 2016, BankUnited wired approximately $610,190.36 from Miami Lakes, Florida to the Attorney Trust Account to pay Vanguard to refinance a mortgage that the defendant MATTHEW T. VOSS had purportedly had taken on the Northfield Lane Property.

18.     These moneys were not used to refinance an underlying mortgage for the defendant MATTHEW T. VOSS with respect to the Northfield Lane Property; in fact, VOSS did not have a mortgage on the property.   Instead, Co-Conspirator #1 wired the approximately $610,190.36 that had been provided by BankUnited directly from the Attorney Trust Account into Vanguard's operating account.   From there, the moneys were used, among other things, to pay for Vanguard executives' personal expenses and compensation.

### Fraudulent Loan Submission #2

19.     On approximately October 12, 2016, the defendant MATTHEW T. VOSS sent a text message to Co-Conspirator #1.   The message read, in part: "Ed's in a tight spot with

---

[4]     Contrary to its general practice, Vanguard did not sell Client #1's mortgage to any secondary market investor.   The loan remained unpaid on Vanguard's warehouse line of credit with Santander, and Santander began to curtail (deduct weekly payments) from Vanguard's Curtailment Account in order to obtain repayment of the loan.   Ultimately, Vanguard repaid the Santander warehouse loan via the weekly deductions from Vanguard's Curtailment Account with Santander.

his house.  We can just refi it in [Client #1's] name but since we're holding the mortgage I'd need it wired back to me."[5]

20.    On approximately October 14, 2016, pursuant to a fraudulent loan submission provided to Santander by the defendants, Santander wired approximately $622,474.49 from Short Hills, New Jersey to the Attorney Trust Account to pay for a mortgage loan refinance purportedly to be provided by Vanguard to Client #1 in connection with the Northfield Lane Property.

21.    Co-Conspirator #1, in turn, wired the approximately $622,474.49 from the Attorney Trust Account to Vanguard's operating account.  After receiving the wire from Co-Conspirator #1, Vanguard transferred approximately $613,659.38 to pay off the August 2016 BankUnited warehouse loan issued in connection with Fraudulent Loan Submission #1, above, to refinance a non-extant mortgage for the Northfield Lane Property in the defendant MATTHEW T. VOSS's name.[6]

**b.  Samos Lane**

22.    On approximately January 12, 2016, Vanguard provided a mortgage to Client #2, an individual whose identity is known to the undersigned, in connection with the sale of a property located on Samos Lane in Whitestone, New York (the "Samos Lane Property").

---

[5]    In March 2017, during a recorded telephone conversation with a co-conspirator, the defendant MATTHEW T. VOSS stated, with regard to Client #1's August 2015 loan, "We basically paid it off out of Vanguard's cash flow."  In sum and substance, by never selling the loan in the secondary market and leaving it on the Santander line of credit, the Northfield Lane Property (the house in which defendant EDWARD E. BOHM lived) was purchased via periodic withdrawals from Vanguard's Curtailment Account at Santander.

[6]    During a recorded telephone call discussing the fraudulent scheme with a co-conspirator in approximately March 2017, VOSS acknowledged: "I don't know what could happen to me . . . . Obviously I have a lot of liability in this."  VOSS also acknowledged that he had made "huge mistakes" by participating in the scheme.

Fraudulent Loan Submission #3

23.     Subsequently, the defendants, together with others, provided to Santander a false submission for a warehouse loan to pay to refinance Client #2's mortgage on the Samos Lane Property.

24.     In connection with this loan submission, on approximately November 9, 2016, the defendant EDWARD J. SYPHER, JR., sent an email to Co-Conspirator #1 with the subject line "Wire pass thru." SYPHER wrote, "You will be receiving a wire today in the amount of [$]1,503,037.02. Upon receipt, please forward the monies via the attached wire instructions . . ."

25.     On approximately November 9, 2016, Santander wired approximately $1,503,037.02 from Florham Park, New Jersey to the Attorney Trust Account. Co-Conspirator #1, in turn, sent a wire for the same amount from the Attorney Trust Account to Vanguard's operating account in accordance with the wire instructions provided by the defendant EDWARD J. SYPHER, JR., in the above-referenced email.

26.     The approximately $1,503,037.02 was not used to refinance Client #2's mortgage. Instead, the approximately $1,503,037.02 provided by Santander was used, among other things, to pay for Vanguard executives' personal expenses and compensation.

**c. Hollywood Avenue**

Fraudulent Loan Submission # 4

27.     On approximately September 23, 2016, Northpointe approved a warehouse loan to Vanguard based upon a false loan submission provided by the defendants, and others, for a refinancing of an investment property the defendant EDWARD J. SYPHER, JR., owned on Hollywood Avenue in Bronx, New York (the "Hollywood Avenue Property").

28.     On the same day, the defendant MATTHEW T. VOSS sent an email to

Co-Conspirator #1, copying the defendant EDWARD J. SYPHER, JR., and stating, in part, "the

wire amount is $399,966.50."   The defendant EDWARD E. BOHM shortly thereafter sent an

email to Co-Conspirator #1, VOSS and SYPHER, informing them that Co-Conspirator #1 had

not yet received the wire, and asking SYPHER to send Co-Conspirator #1 wiring instructions.

SYPHER subsequently sent an email with instructions for wiring money to Vanguard's operating

account.

29.     Later the same day, Northpointe wired approximately $399,966.50 to the

Attorney Trust Account.   Co-Conspirator #1, in turn, forwarded these moneys from the Attorney

Trust Account to Vanguard's operating account.

30.     The approximately $399,966.50 was not used to pay to refinance an

underlying mortgage on the defendant EDWARD J. SYPHER, JR.'s Hollywood Avenue

Property, as provided in SYPHER's loan submission to Northpointe.   Instead, once transferred

into Vanguard's operating account, the moneys were used, among other things, to pay for

Vanguard executives' personal expenses and compensation.[7]

Fraudulent Loan Submission #5

31.     On approximately December 12, 2016, Santander approved a warehouse

loan to Vanguard based upon a false loan submission provided by the defendants, and others, for

a refinancing of the Hollywood Avenue Property.

---

[7]     In a recorded telephone conversation with a co-conspirator in 2017, BOHM expressed
confidence that the co-conspirators would evade criminal liability because the victims of their
fraudulent scheme were financial institutions, stating, in part: "At the end of the day, the shit we
did wasn't to the public."   During another 2017 recorded telephone call with a co-conspirator,
BOHM told Co-Conspirator #1 "Hopefully, if it goes away, nobody will look."

32.     On the same day, in connection with the submission, the defendant

EDWARD E. BOHM sent an email to Co-Conspirator #1 containing instructions for wiring

money to Vanguard's operating account.   That afternoon, the defendant EDWARD J. SYPHER,

JR., copying the defendant MATTHEW T. VOSS, sent an email to Co-Conspirator #1 containing

replacement instructions, instead directing Co-Conspirator #1 to wire funds directly to

Northpointe.   In the email, SYPHER included a note indicating that the wire concerned the

"Vanguard/Sypher loan."   VOSS advised Co-Conspirator #1 to expect a $396,366.37 wire, and

specified, in part, "this is to payoff the warehouse bank."

33.     Santander wired approximately $396,366.37 from Short Hills, New Jersey,

into the Attorney Trust Account.   Co-Conspirator #1, in accordance with his instructions from

the defendants, wired these moneys directly from the Attorney Trust Account to Northpointe

Bank in Grand Rapids, Michigan, and placed the note "Vanguard/Sypher Loan" in the payment

details.

34.     In sum, Santander's loan was not used, as provided in the false loan

submission, to refinance a mortgage on the Hollywood Avenue Properly.   Instead, the

defendants used the moneys to pay off the September 23, 2016 warehouse loan that Northpointe

had provided in connection with Fraudulent Loan Submission #4 and which the defendants had

used for improper purposes.[8]

---

[8]     Later, during a recorded meeting within the Vanguard offices in 2017, EDWARD
J. SYPHER, JR., opined that he would be able to deny his role in the fraudulent scheme if
criminal charges were ever filed.   He stated, in part: "I'm a W-2 employee.   I don't pull strings
in this fuckin' thing . . . ."   He also attempted to protect himself from any criminal investigation
by directing a co-conspirator as follows: "you and I never had any communication on any of this
shit.   Ever.   Ever.   Okay?   Outside of the normal course of business.   None.   So, we're not
going to fuckin' jail."

## **CONCLUSION**

35.     In sum, I believe that the defendants MATTHEW T. VOSS, EDWARD E. BOHM and EDWARD J. SYPHER, JR conspired to and did execute and attempt to execute a scheme to defraud the Banks and obtain warehouse loans by means of materially false and fraudulent warehouse loan submissions, and for the purpose of executing such scheme, transmitted and caused those loans to be transmitted, by means of wire communication in interstate and foreign commerce, from the Banks to Vanguard's operating account.   Instead of using the warehouse loans to pay for mortgages, the defendants used the money to pay Vanguard executives' personal expenses and compensation, and to perpetrate the fraudulent scheme by paying off previous warehouse loans obtained using false loan submissions.

36.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the instant complaint and application and related arrest warrants.   The defendants are currently at liberty, and it is respectfully submitted that sealing these documents is necessary to prevent the defendants from learning that a complaint has been filed and arrest warrants issued, and to thus prevent the defendants from avoiding arrest and prosecution.

WHEREFORE, your deponent respectfully requests that the defendants

EDWARD E. BOHM, EDWARD J. SYPHER, JR., and MATTHEW T. VOSS be dealt with

according to law.

JOHN G. KAROUNOS
Special Agent, Federal Bureau of Investigation

Sworn to before me this
18th day of August, 2017

___/s/ A. Kathleen Tomlinson___
THE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK